UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PAMELA NAPLES,

        Plaintiff,

v.                                     CASE NO. 3:18-cv-738-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"). Following two administrative hearings held on October 19, 2016 and February 16, 2017, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from January 9, 2014, the alleged disability onset date, through June 8, 2017, the date of the decision.[2] (Tr. 7-116.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 18.)

[2] Plaintiff had to establish disability on or before March 31, 2019, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 10.)

## I.    Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence, because the ALJ did not

adequately evaluate the opinions of the testifying impartial medical expert, Dr.

Jeffrey Hansen, and improperly gave little weight to the opinions of Janice

Wilmoth, Ph.D., Psy.D., CCS, a one-time examining psychologist.  The

Commissioner responds that substantial evidence and proper legal analysis

support the ALJ's decision.  The Court agrees with the Commissioner.

At step two of the five-step sequential evaluation process, the ALJ found

that Plaintiff had the following severe impairments:

> [A] history of chronic low back pain; a history of hyperlipidemia; a
> history of obesity; a history of major depressive disorder (moderate);
> a history of pain disorder due to psychological factors and a general
> medical condition; a history of generalized anxiety disorder; a history
> of obstructive sleep apnea without use of a CPAP on a consistent
> basis; a history of hypertension; a history of carpal tunnel syndrome
> (right greater than left) with right middle trigger finger[;] and a history
> of alcohol and tobacco abuse[.]

(Tr. 12.)

The ALJ then found that Plaintiff had the RFC to perform "less than the full

range of light work" as follows:

> In an 8-hour workday, with reasonable and customary breaks, the
> claimant can sit, stand and walk for 6 hours each.  The claimant can
> lift/carry 20 pounds occasionally and 10 pounds or less more
> frequently; she can use her upper and lower extremities for the
> push/pull operation of arm/hand and foot/pedal controls at least
> occasionally; she can climb ramps and stairs occasionally, but never
> climb ropes, ladders and scaffolds; she can bend, stoop, crouch and
> kneel occasionally but never crawl.  With her upper extremities, she
> can reach in all directions frequently.  With respect to her dominant
> right hand, she can handle and feel frequently but only perform fine
> manipulation occasionally; she can use her left hand to perform such
> handling, fingering and feeling on a frequent basis.  The claimant

has no difficulties in her ability to see, speak and hear. The claimant should not work in proximity to unprotected heights, around dangerous moving machinery or around concentrated industrial vibrations. The claimant can perform work either at the unskilled or semi-skilled level (SVP of 1-4) with only occasional contact with co-workers, supervisors and members of the public. The claimant should not have any job requiring her to meet a strict production goal or quota[,] such as assembly type work.

(Tr. 14.)

In doing so, the ALJ discussed Plaintiff's complaints and daily activities, the treatment notes, the objective medical records, and the opinion evidence. (Tr. 14-26.) The ALJ addressed Dr. Wilmoth's examination as follows:

In December 2016, the claimant presented to Janice Wilmoth, Ph.D., Psy.D. to determine her diagnoses and abilities. She reported that the VA had awarded her 40% for her back injury but nothing for her depression. She reported that she last worked at Pep Boys, but could not handle it anymore and stopped working. She stated that others helped her as much as they could and that they even bought her a stool so she would not have to stand, but even with such assistance she was no longer able to function adequately. Upon examination, the claimant walked slowly and with a cane. She was alert and oriented. She was cooperative, made adequate eye contact and was able to establish a superficial rapport. She had difficulty recalling dates and places. She was able to pay attention with difficulty across the course of the evaluation. She was in pain as the day progressed and she had more difficulty walking. Her comprehension seemed good and her thought content was appropriate. She appeared to comprehend instructions. She reported no desire to be around people. She showed no attempts to improve her appearance either with makeup, clothes or a haircut. On a standard measure of cognitive effort and memory, she passed all portions of the test. There was no evidence of malingering or cognitive problems. Dr. Wilmoth noted that she appeared to have memory problems, but they were not measured as part of the evaluation. Dr. Wilmoth noted that the likely impetus for the claimant's level of depression and chronic pain was her military

service and the accidents she encountered in the military.  In addition, Dr. Wilmoth noted that the claimant's capacity to interact with others, stay focused on a project and have the capacity to see it through was extremely limited.  Further, Dr. Wilmoth indicated that the claimant's pain limits her concentration and contributes to her irritability, which could cause significant problems in the workplace.  Dr. Wilmoth diagnosed the claimant with major depression, recurrent, severe; pain disorder associated with both psychological factors and a medical condition; generalized anxiety disorder and alcohol abuse in sustained remission (Exhibits 16F and 17F).

(Tr. 22-23.)

The ALJ gave Dr. Wilmoth's opinions "little weight."  (Tr. 25.)  The ALJ

reasoned:

Dr. Wilmoth examined the claimant only once, reviewed the file and did not offer treatment to the claimant.  It appears that the focus of this assessment was to try to assist the claimant in gaining an increased VA service connected disability rating as she was attempting to link her depression to her military service.  This conclusion is simply not supported by either her VA records or her intervening work history.  This assessment is also, in some respects, inconsistent with the conclusions offered by Dr. Joshi, her VA treating psychiatrist who has treated her for more than one and a half years.  Dr. Joshi's many mental status assessments are inconsistent with the evaluation offered by Dr. Wilmoth and fail to support her contention that this claimant's current depression is connected with her prior military service.

(*Id.*)

The ALJ also addressed Dr. Hansen's opinions as follows:

At the February 2017 administrative hearing, an independent medical expert and board certified orthopaedic surgeon, Jeffrey Hansen, M.D. (Exhibit 18F) testified regarding the claimant's impairments.  Dr. Hansen testified that the claimant has a history of back pain with symptoms of sciatic nerve irritation subsequent to injuries, and, specifically, a fall a couple decades ago.  Dr. Hansen

indicated that a 2012 MRI showed degenerative disc disease at L5-S1 with no foraminal or canal narrowing, which means there is no nerve compression (Exhibit 6F/18). He stated that there was an annular tear and a little bit of facet arthritis, but the rest of the scan was normal. He noted that this is a relatively benign and mild MRI without any nerve compression. As to her sciatic nerve irritation, he noted that there was not a full explanation in the record for her symptomatology. He testified that she has developed problems with her fingers more recently and that an EMG confirmed carpal tunnel syndrome (Exhibit 14F/43). In addition, he testified that she has some sacroiliac pain and depression. Dr. Hansen acknowledged that there was no evidence of any neurological deficits in the claimant's lower extremities. He also stated that there is no true evidence of radiculopathy. He testified that the objective findings are quite minimal.

Dr. Hansen opined that the claimant did not meet or equal any listing. As to her residual functional capacity, Dr. Hansen opined that the claimant could lift/carry 20 pounds occasionally and 10 pounds or less more frequently. He opined that she could sit for one hour before moving to stretch. He indicated that she could sit for a total of five hours in an eight-hour workday. He indicated that she could stand for 30 minutes at one time and walk 15 minutes at one time. He indicated that she could stand and walk for four hours total in an eight-hour workday. He stated that she could go up to six hours for [sic] standing and walking, as long as it was a sit/stand option. He opined that she may need two additional 15 minute breaks above normal work breaks each day. He stated that she should not climb ladders, ropes or scaffolds. He indicated that she can climb stairs or ramps on an occasional basis. He indicated that she should avoid work around moving machinery and unprotected heights. He stated that she could balance, bend, kneel and stoop occasionally, but never crawl. As she has a carpal tunnel syndrome, Dr. Hansen would limit overhead reaching to frequently and handling, fingering and repetitive hand motions to occasionally. In addition, he indicated that cold and vibration should be limited.

(Tr. 23-24.)

The ALJ "accorded some partial weight to the opinion offered by Dr.

Hansen." (Tr. 26.) The ALJ stated that "in light of the claimant's lack of neurological involvement, generally benign examination findings and minimal findings on diagnostic imaging studies, the [ALJ] does not find that a sit/stand option is necessary and does not find that use an assistive device has been medically necessary as detailed under the provisions of SSR 96-9p." (*Id.*)

Then, the ALJ found that the evidence did not establish that Plaintiff's impairments were disabling in nature or prevented her from performing work in accordance with the RFC assessment. (Tr. 24.) The ALJ stated:

> The claimant has been treated at the VA for her depression, anxiety and a pain disorder since she stopped working in late 2013. It does not appear that her work ended due to mental related issues as she claimed she could not perform the physical demands of this work at an auto parts dealership. Her story is not consistent. First, she stated that she was laid off and then she was terminated and then that she resigned from this position. The VA records seem to support the [] last version of events.
>
> With regard to her back impairment, she has a minimal VA service-connected disability for a lumbar and cervical spine strain. Diagnostic imaging of her lower back and SI joints fail to demonstrate any significant underlying pathology and this is consistent with Dr. Hansen's hearing testimony. The degenerative changes demonstrated on numerous imaging studies are minimal at best. Dr. Hansen testified that she might have some facet arthritis, but the imaging studies do not support such a conclusion. Dr. Hansen acknowledged that there were no frank neurological abnormalities noted on the many physical exams contained in the record. The claimant has received only conservative medical care and the record does not indicate that any spine surgery has ever been recommended. If the [RFC] is the most she can do based on the objective medical findings and giving consideration to the provisions of SSR 96-8p, the undersigned finds that this claimant should be able to stand and walk for up to six hours and sit for a like

period of time. The claimant has had some recent NCV/EMG studies showing some bilateral carpal tunnel syndrome, worse on the right and the record also documents some trigger fingers. Her treatment has been conservative. She has received some corticosteroid injections for her trigger fingers and received some wrist splints. . . . Further, the claimant has refused to consider any surgery to relieve her carpal tunnel symptoms. She has reported that she is able to zip zippers and fasten buttons and to perform other tasks requiring some fine finger dexterity. As to her mental health, the various mental health assessments performed by Dr. Joshi have not been substantially abnormal. She has been on Zoloft for more than 10 years but has often not taken this medication consistently and has consumed, at times, large quantities of alcohol in contravention of the advice of her treating VA doctors, which actions have been adverse to her depression. She has continued to drink despite Dr. Joshi's repeated recommendations to stop and she refused to participate in any therapy groups to assist her depression or her substance abuse. Additionally, her daily activities do not appear significantly limited. . . . VA treatment records indicate that she has been able to visit with friends, watch television and football games, pursue a degree in biomedical engineering, go camping with friends at a state park, take steps toward volunteering at a local museum, garden and take her two dogs to a local dog park.

(Tr. 24-25.) Ultimately, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 27.)

The Court finds that the ALJ's decision is supported by substantial evidence. First, the ALJ did not err in his evaluation of Dr. Hansen's opinions. Dr. Hansen opined that Plaintiff could go up to six hours of standing and walking as long as she had a sit/stand option. The ALJ found, however, that a sit/stand option was not necessary in light of Plaintiff's "lack of neurological involvement, generally benign examination findings and minimal findings on diagnostic imaging studies." (Tr. 26.) Substantial evidence in the record supports the ALJ's findings.

As the ALJ observed, the diagnostic imaging studies of Plaintiff's lower back and sacroiliac joints failed to demonstrate any significant underlying pathology and actually indicated lack of neurological involvement, which Dr. Hansen conceded during his testimony. (*See* Tr. 53-54, 56, 61-62 & 65 (Dr. Hansen's pertinent testimony); Tr. 1066 (noting a lumbar MRI of April 10, 2012 showed degenerative disc disease at L5-S1 with no significant central canal or foraminal narrowing with small annular tear); Tr. 1175-76 (noting an X-ray of the SI joints from November 29, 2012 was normal); Tr. 1174-75 (noting a lumbar X-ray from May 29, 2014 showed mild spasm or scoliosis, mild marginal spurring, mild disc space narrowing at L5-S1, and mild spurring in the lower thoracic spine; the impression was mild spondylosis with no acute bony abnormality).)

Further, the examination findings were generally benign, indicating "no frank neurological abnormalities" as conceded by Dr. Hansen. (*See* Tr. 1034-40 (noting that Plaintiff was doing much better as of March 7, 2014); Tr. 993-1000 (reporting improved low back pain with some paraspinal tenderness as of July 7, 2014); Tr. 1540 (noting an unremarkable examination as of April 16, 2015); Tr. 1631-39 (noting that Plaintiff was stable as of December 31, 2015); Tr. 1581-83 (noting no evidence of right leg radiculopathy on EMG as of June 28, 2016); Tr. 1554 (noting continued pain management of Plaintiff's lower back pain radiating into the right lower extremity, in light of the EMG testing, which was negative for radiculopathy, as of August 31, 2016).) The progress notes from primary care

provide that it was difficult to determine if Plaintiff had any true neurological weakness.  (*See* Tr. 1012-13, 1599 (also noting antalgic gait and guarded range of motion).)[3]

Dr. Hansen also testified that Plaintiff "may have to have some extra rest periods that are not ordinarily part of a job description, and if that's necessary, then she may need up to two 15-minute breaks per day additional to the normal job description."  (Tr. 58.)  However, later in his testimony, Dr. Hansen stated that perhaps he has "over-limited" Plaintiff's functional ability as to standing and walking, given the lack of "evidence in the record that [Plaintiff] truly has radiculopathy" and the "quite minimal" objective findings.  (Tr. 61-62; *see also* Tr. 63 ("I could certainly be convinced that it would be more reasonable to bring her up to at least four hours [of] standing and walking, and your question about six

_____

[3] The record also reflects some positive examination findings.  (*See* Tr. 860-61 (noting, on March 26, 2014, tenderness to digital palpation, muscle tension and spasm on both sides of the lumbar spine and sacroiliac joints, as well as multiple active trigger points; a positive straight leg raising test, a positive prone hip extension test, and a positive piriformis test on the right; reduced thoracic range of motion; and increased sensation shown by pinwheel testing of the S1; but also noting that Plaintiff would continue with her current treatment plan, consisting of manipulation, myofascial release, conservative therapy, and at home therapy and exercise plan); Tr. 1012 (noting, on May 29, 2014, antalgic gait, moderate distress due to pain, and guarded range of motion of the spine); Tr. 1185-88 (noting, on October 13, 2014, some positive findings on examination, but also noting that the majority of Plaintiff's limited range of motion and immobility is secondary to her avoidance of muscle stretching, which may provide significant benefit); *see also* Tr. 862-71.)  Despite these positive examination findings, most of the chiropractic treatment notes indicate that Plaintiff "continue[d] to improve with manipulation and therapy with decreased pain levels and improved sleep pattern." (Tr. 865-71.)  Plaintiff's antalgic and/or slow gait was also noted during her mental status examinations.  (Tr. 944, 971, 1083, 1266, 1293, 1309, 1321, 1571, 1614, 1676, 2227; *see also* Tr. 1667 (noting "slow, deliberate, antalgic gait").)

hours in an eight-hour day, I don't have objective evidence that can say that she could not stand and walk six hours; I'm basing it [again on] her description of symptoms and a number of practitioners' description of findings[.]"); Tr. 64 ("[T]here's not really much objective evidence, if any, that suggests she has to be highly restricted in her activities from the standing and walking standpoint. . . . I said four hours, we could even go into six hours of walking and standing, as long as it was a sit/stand/walk option where she could do different things as frequently as possible.").)

First, Dr. Hansen did not definitively opine that Plaintiff would need additional breaks. (*See* Tr. 58.) Moreover, his vague opinion on that issue was part of his earlier testimony, which he was willing to change because it admittedly "over-limited" Plaintiff's functional ability. Further, as shown above, the ALJ's reasons for giving "some partial weight" to Dr. Hansen's opinions are supported by substantial evidence. The ALJ credited only those parts of Dr. Hansen's opinions that he found to be supported by the record. In any event, the ALJ's RFC assessment did not need to mirror or match the findings or opinions of any particular medical source (especially when that source's opinions have been discredited), because the responsibility for assessing the RFC rests with the ALJ. *Kopke v. Astrue*, 2012 WL 4903470, *5 (M.D. Fla. Sept. 26, 2012) (report and recommendation adopted by 2012 WL 4867423 (M.D. Fla. Oct. 15, 2012)).

Plaintiff further argues that the ALJ's reasons for according "little weight" to Dr. Wilmoth's opinion are not supported by substantial evidence. After reviewing certain medical records, administering tests, and performing a mental status examination of Plaintiff on December 22, 2016, Dr. Wilmoth opined, in relevant part, that Plaintiff's "low tolerance for being around people for very long would limit greatly her ability to function in a work environment" and "[h]er capacity to interact with others, stay focused on a project and have the capacity to see it through [was] extremely limited." (Tr. 2209.) The ALJ provided specific reasons, supported by substantial evidence, for giving "little weight" to Dr. Wilmoth's opinions.

First, as the ALJ noted, Dr. Wilmoth was a one-time examining consultant; as such, her opinions were not entitled to any special deference. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). The ALJ also stated that it appeared "the focus of [Dr. Wilmoth's] assessment was to try to assist the claimant in gaining an increased VA service connected disability rating as she was attempting to link her depression to her military service," which was "not supported by either her VA records or her intervening work history." (Tr. 25.) The ALJ's observation seems to be supported by Dr. Wilmoth's report. (*See* Tr. 2202 ("The VA has awarded her 40% for her back injury but nothing for the depression that has accompanied her pain. She was referred for this evaluation

to determine her diagnosis and her abilities."); Tr. 2208 ("Likely, the impetus for Ms. Naples's level of depression and chronic pain was her service in the military and the accidents she encountered in the military."); Tr. 2209 ("Her symptoms, other than pain, have developed and worsened over time as a result of her treatment by the Army. The chronic pain she is in has contributed to her depression and to her suicidal thoughts. Because of their origin, they must be assumed to be 100% attributable to her time in service."); *see also* Tr. 2197-98 ("Symptoms interact and affect each other. . . . All of her diagnoses affect her ability to function in the workplace, along with her medical issues. . . . [A] [s]lip and fall in the service [and a] motorcycle accident in [the] service were the cause of the pain[,] but being taken off the flightline and later discharged from [the] service all contributed to her current condition.").)

Further, the ALJ properly stated that Dr. Wilmoth's assessment was "in some respects, inconsistent with the conclusions offered by Dr. Joshi, [Plaintiff's] VA treating psychiatrist who has treated her for more than one and a half years" and that "Dr. Joshi's many mental status assessments [were] inconsistent with the evaluation offered by Dr. Wilmoth and fail[ed] to support her contention that [Plaintiff's] depression [was] connected [to] her prior military service." (Tr. 25.) These statements are also supported by substantial evidence.

For example, the ALJ properly stated that "the various mental health

assessments performed by Dr. Joshi have not been substantially abnormal" (Tr. 24). (*See* Tr. 976-86 (noting, on July 15, 2014, that Plaintiff had blunted affect; passive, fleeting suicide ideation due to chronic pain and finances, without intent or plan; and a positive screen for depression; but noting an otherwise normal mental status examination); Tr. 1317-24 (noting an unremarkable mental status exam as of September 17, 2014); Tr. 1305-1313 (noting an unremarkable mental status exam, other than an irritable mood and a tense face, as of October 15, 2014); Tr. 1289-96 (noting an unremarkable mental status examination, except an irritable mood and constricted affect, as of October 31, 2014); Tr. 1735-43 (noting an unremarkable mental status examination as of May 4, 2015); Tr. 1720-29 (noting an unremarkable mental status examination as of June 24, 2015); Tr. 1676-83 (noting an unremarkable mental status examination as of October 14, 2015); Tr. 1650-55 (noting an unremarkable mental status examination as of December 15, 2015); Tr. 1615 (noting a dysphoric and irritable mood and constricted affect, but otherwise normal mental status examination as of March 15, 2016); Tr. 1567-76 (noting an unremarkable mental status examination, except a sad mood, as of July 22, 2016); Tr. 2223-34 (noting an unremarkable mental status examination, other than an irritable mood, as of November 28, 2016, and reporting, *inter alia*, that medications were helping); *see also* Tr. 1083-85 (noting that Plaintiff improved after medication changes as of May 7, 2013); Tr.

1067-68 (noting that Plaintiff's depression was in remission as of December 10, 2013); Tr. 941 (noting on August 20, 2014 that Plaintiff was "less anxious, less angry, less irritable and less depressed" and had more interest and motivation); *but see* Tr. 1754-61 (noting a dysphoric mood, constricted affect, and feelings of hopelessness, helplessness, and failure as of March 9, 2015).

In addition, the ALJ stated that Plaintiff continued to drink and refused to participate in therapy groups for her depression or substance abuse, contrary to Dr. Joshi's recommendations. (Tr. 25.) This statement is also supported by substantial evidence in the record. (*See* Tr. 948, 1270, 1296, 1313, 1761, 2232.) Based on the foregoing, the ALJ properly evaluated the opinions of Dr. Wilmoth and Dr. Hansen, and his decision is supported by substantial evidence.

### III.    Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question should be affirmed.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **AFFIRMED**.

2.      The Clerk of Court shall enter judgment accordingly, terminate any

pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on August 28, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record